IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY HAWKS,<br>JANENERE HAWKS<br>DANA ANTHONY HAWKS<br>Plaintiffs,<br>v. | *<br><br>*<br><br>* | CIVIL ACTION NO. PJM-10-2250 |
| LARRY DAVID<br>ALLEN ADKINS<br>DAVID PHIPPS<br>CHRISTOPHER TIMMS<br>PAUL ABELL<br>JOSEPHINE BROWN<br>ALONG (First Name Unknown)<br>PARK (First Name Unknown)<br>HUDSON<br>SELMAN (First Name Unknown)<br>FITZGERALD<br>GEORGE (First Name Unknown)<br>KREMER (First Name Unknown)<br>NANCY B. SHUAR<br>JAMES SALKIN<br>DANIAL L. SUSSMAN<br>GARY A. TICKNOR<br>STATE OF MARYLAND<br>WILLIAM D. SCHAEFER<br>MARTIN O'MALLEY<br>CITY OF BALTIMORE, MD<br>KURT SCHMOKE<br>STEPHANIE RAWLINGS-BLAKE<br>Defendants. | *<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br>*** | |

**MEMORANDUM OPINION**

This exhaustive Complaint represents the second time that Plaintiff Anthony D. Hawks ("Hawks") has filed suit against Baltimore City Police Officers regarding incidents occurring in 1993 and 1994.[1] The instant Complaint, filed on August 13, 2010, cites to "Maryland Constitutional

---

[1] Hawks is currently confined at the United States Penitentiary at Hazelton. He is serving a 322-month sentence imposed in November of 1994, in *United States v. Hawks*, Criminal No. WDQ-94-206

Tort" under "Title 28 U.S.C. §§ 1983 & 1985." The action was filed by Hawks, his wife Janenere Hawks, and their son Dana Hawks.[2] Named as Defendants are Baltimore City Police Officers Allen Adkins, David Phipps, Christopher Timms, Paul Abell, Josephine Brown, "Along," "Park," "Hudson," "Selman," "Fitzgerald," "George," "Kremer," Baltimore City District Court Judge Nancy B. Shuar, attorneys James Salkin, Danial L. Sussman, and Gary A. Ticknor, former and current Governors William D. Schaefer and Martin O'Malley, and former and current Baltimore City Mayors Kurt Schmoke and Stephanie Rawlings-Blake. The thirty page Complaint raises a plethora of grounds going to alleged constitutional violations, conspiracy, constructive fraud, breach of fiduciary duty, negligence, negligent misrepresentation, legal malpractice, false imprisonment, malicious prosecution, battery, intentional infliction of emotional distress, gross negligence, and deliberate indifference. Paper No. 1.

The Complaint alleges that in October of 1993, Timms, Adkins, and Abell approached Hawks at a Baltimore City street corner. Officer Timms allegedly grabbed Hawks "very hard," asked him for his name, and told him he was "going to get him." Hawks claims that a month later, on November 11, 1993, the same three officers were arresting a Charles Davis in the vicinity of where Hawks was walking and Timms pointed a gun at him, told him to "halt," used racial epithets, pushed him into an alley, handcuffed him to a fence, and began assaulting him. Hawks avers that he required and received subsequent medical attention. Paper No. 1. He further claims that Timms assaulted him at his home on January 8, 2004, resulting in his having to be "rushed to a hospital."[3]

---

(D. Md.)

[2] From a review of the complaint and envelope it would appear that Hawks is the driving force behind the filing of the Complaint.

[3] Hawks also claims that his wife and son were illegally arrested in 1994 simply because they asked Officer Timms why he was assaulting Hawks.

Hawks seemingly alleges that his arrest and the charges and indictment filed against him and his wife in state court regarding incidents on November 11, 1993 and January 8, 2004, were based on the manufactured evidence and testimony of the three detectives. Hawks contends that as his February 7, 1994 preliminary hearing was about to proceed before Judge Shuar, his defense attorney James S. Salkin approached Baltimore City State's Attorney Larry David and informed David that Charles Davis's attorney, Gary Ticknor, had written him a letter questioning the credibility of Timms, Adkins, and Abell because an audio tape of their voices supported the claims of Hawks and his witnesses. *Id.* at p. 15. Hawks claims that State's Attorney David informed his defense attorney he was dropping all the charges against Hawks related to the November 11, 1993 arrest, but would proceed with the prosecution of him and his wife as to a January 8, 1994 arrest and indictment. Hawks complains that the charges were deliberately dropped by David as part of a cover-up to prevent full disclosure of the audio tape by Judge Shuar and asserts that defense attorney Sussman refused to represent him further in regards to the prosecution of the January 1994 charges.[4]

Hawks's Complaint continues on to repeatedly challenge the prosecution related to the January 1994 arrest; the continued harassment by Office Timms in 1994; and the fabricated information produced by the detectives used to obtain a search warrant to conduct a raid of his and his wife's home in January 1994. He claims that the January 1994 indictment proceeded to trial on March 14, 1994, and the attorneys did not inform Judge Shuar of the detectives' criminal misconduct and allowed Timms, Adkins, and Abell to continue to testify under oath. Hawks alleges that his wife was found not guilty on all remaining counts, while he was acquitted of all but one count. *Id.* at pgs. 16-18.

---

[4] It would appear that defense attorney Salkin represented Hawks in regards to the November 11, 1993 charges, while Sussman represented Hawks as to the January 8, 1994 charges.

To gain some perspective as to the filing of this case, the Court shall examine Plaintiffs' prior Complaint, *Hawks v. Timms, et al.*, Civil Action No. PJM-96-82 (D. Md. 1996). In that prior action, filed on January 11, 1996, Hawks sued Officers Christopher Timms, Allen Adkins, and Paul Abell concerning a November 1993 incident, alleging that he was beaten, arrested, and charged by the officers with assault and battery, various drug offenses, and transporting a firearm while engaged in a drug trafficking crime. He claimed that those charges were dismissed. *See Hawks v. Timms, et al.*, Civil Action No. PJM-96-82 (D. Md.). In a second amended complaint and deposition, Plaintiff reiterated his claims against Timms and Abell with regard to the November 1993 incident. He further alleged that during a second incident on January 8, 1994, he was subject to a home invasion by Timms and other Baltimore City Police Officers and was beaten by Timms and Adkins.[5]

The case proceeded to a trial before a jury in February of 1999 as to Defendant Timms and the jury found in his favor as to count two and a mistrial was declared as to the sole remaining count. Before the case could proceed to a re-trial the parties stipulated to a dismissal. The action was dismissed on or about September 30, 1999.[6]

The instant case shall not proceed for an answer. Rather, it shall be dismissed under the doctrines of claim and issue preclusion and as time-barred. Under the doctrine of *res judicata* or claim preclusion, a final decision on the merits of an action precludes the parties or their privies from re-litigating issues that actually were raised or could have been raised in that action. *See Migra*

---

[5] Hawks filed another civil rights complaint in 1997 against a number of unnamed officers and Officer David Phipps. *See Hawks v. Unknown Officers of the City of Baltimore in the District of Front Hill, Southwestern Police Department, et al.*, Civil Action No. PJM-97-3509 (D. Md.). The case was dismissed under 28 U.S.C. § 1915(e) on March 17, 1998. The decision was affirmed on appeal.

[6] Hawks claims that it was while reading the deposition and trial transcripts of the prior civil case in September of 1999, he discovered the lies, inconsistencies and contradictions among the law enforcement officers and attorneys.

*v. Warren City School Dist. Bd. Of Educ.*, 465 U.S. 75, 77 n.1 (1984). Moreover, the doctrine of collateral estoppel, or issue preclusion, operates to prevent re-litigating matters determined in a prior proceeding. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). In effect, it prevents a plaintiff from asserting a claim that he had previously litigated against another defendant. Collateral estoppel may be used as a bar if a plaintiff had a full and fair opportunity to litigate the issues in the previous suit; mutuality of the parties is not required. *See Blonder-Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313 (1971); *Thurston v. United States*, 810 F.2d 438 (4th Cir. 1987).

When separating the chaff from the wheat, the allegations raised in the instant case seeking damages clearly represent Hawks attempt to revisit and litigate anew his allegations concerning the misconduct of Baltimore City Police Officers in 1993 and 1994. He may not so do. This new action, while factually embellished and amended to include his wife and son as Plaintiffs and additional law enforcement parties, a state district court judge, a prosecutor, defense counsel, and the former and current Governor and Mayor as Defendants, essentially raises the same core claims set out in *Hawks v. Timms, et al.*, Civil Action No. PJM-96-82.

Hawks is estopped from re-litigating his claims. The principles of *res judicata* and collateral estoppel apply to this action. *See Allen v. McCurry*, 449 U.S. 90, 105 (1980). Federal law controls the assessment of the preclusive effect of the earlier federal judgment. *See Harnett v. Billman*, 800 F.2d 1308, 1312-13 (4th Cir. 1986). Where, as here, final judgment was entered as to Hawks's civil rights and common-law tort claims; the parties are identical or in privity;[7] and the claims in the two suits are sufficiently identical as to arise out of the same series of transactions and/or could have

---

[7] Hawks cannot avoid the bar of *res judicata* simply by adding new parties to the second suit. *See Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970).

been filed in the first suit, Hawks is precluded from repackaging his adjudicated civil rights and tort claims. *See Meekins v. United Transportation Union*, 946 F.2d 1054, 1057-58 (4th Cir. 1991); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990).

Alternatively, to the extent that Plaintiffs are raising any claims that are not related to the police officers alleged misconduct and prosecutorial abuses occurring in 1993 and 1994, the Complaint is subject to dismissal as time-barred. When enacting § 1983, Congress determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law. *See Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984). Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *Id.* at 49; *Chardon v. Fumero Soto*, 462 U.S. 650, 655-656 (1983); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). The tradition of borrowing analogous limitations statutes is premised on a congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive polices of enforcement embodied in the state cause of action." *Wilson v. Garcia*, 471 U.S. 261, 271 (1985). Upon review of Maryland's limitations provisions, Maryland's general three-year statute of limitations for civil actions is most applicable to the case at bar. *See* Md. Code Ann., Cts. & Jud. Proc., § 5-101.

Although the state statute of limitations applies, the time of accrual of the action is a federal question. *See Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). The running of the statute of limitations begins when a plaintiff knows or has reason to know of his injury. *Id.* Here, the Hawks, at the latest, should have known of their injuries in 1993-1994, when they were allegedly subject to Defendants' activities. Because they failed to file the instant Complaint until more than sixteen

years after accrual of the incidents, it is clear that the statute of limitations now bars consideration of the claims.[8]

The Court finds that the instant matter is subject to dismissal.[9] A separate Order effecting the rulings made in this Memorandum Opinion is entered herewith.

                                             /s/
                             PETER J. MESSITTE
October 5, 2010               UNITED STATES DISTRICT JUDGE

---

[8] Hawks seemingly claims that he only became aware of the "lies among defendants/vigilantes" when he read the transcripts from his prior civil suit in September of 1999 and that he delayed in filing this action until his children left the Baltimore area and his wife indicated that she was no longer afraid of the police officers. Paper No. 1 at 19-21. These statements do not save his Complaint from the timeliness bar.

[9] Plaintiffs did not submit the $350.00 civil filing fee nor provide indigency applications. In light of the decision of the Court, they shall not be required to cure this deficiency.